UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MUHAMMAD SARFRAZ,

               Petitioner,

   v.                                      Case No. 15-CV-880

JUDY P. SMITH,

               Respondent.

---

## DECISION AND ORDER

---

### I. Facts and Relevant Procedural History

On May 15, 2010, a woman the parties refer to as I.N. was found in the hallway of her apartment building, bloodied, naked from the waist down, crying, and screaming she had been raped. *State v. Sarfraz*, 2014 WI 78, ¶ 4, 356 Wis. 2d 460, 465, 851 N.W.2d 235, 238. I.N.'s neck bore marks of strangulation, she had a knife wound on her finger, and other assaultive injuries on her body. *Id.*, ¶¶ 22-23.

I.N. later stated that she had been in her apartment when someone knocked on her door and identified himself as Jim. (ECF No. 14-3 at 60 (all pagination reflects ECF pagination).) Believing it was her landlord, I.N. opened the door only to find an unknown masked male. (ECF No. 14-3 at 60.) The masked man pushed her into the

bathroom, strangled her with his hands, held a knife to her neck, and threatened to kill her. (ECF No. 14-3 at 60-61.) I.N. continued to struggle and in the process the attacker's mask came off. (ECF No. 14-3 at 61-62.) I.N. recognized her attacker as the petitioner, Muhammed Sarfraz, a man with whom she and her father had recently briefly lived when they first moved to Milwaukee from Pakistan. (ECF No. 14-3 at 62.) I.N. and Sarfraz had been friendly but never had a romantic relationship.

I.N. was able to grab the knife and cut Sarfraz on the cheek. (ECF No. 14-3 at 63.) Fearing that Sarfraz was going to kill her, I.N. continued to struggle and scream as the assault continued throughout the apartment. (ECF No. 14-3 at 63-70.) Believing she would not survive, I.N. started to scrawl Sarfraz's name in blood on a newspaper and on a file cabinet but each time was able to write only the first three letters. (ECF No. 14-3 at 70); *Sarfraz*, 2014 WI 78, ¶ 20. The physical assault turned sexual and Sarfraz eventually raped I.N.

Police arrested Sarfraz later that day and recovered a bloody knife hidden under the front seat of the car he was driving. *Sarfraz*, 2014 WI 78, ¶¶ 5, 21. When asked about the cut on his face, Sarfraz told the police he had been robbed by "two African American guys." (ECF No. 14-7 at 16.) Subsequent testing identified both I.N.'s and Sarfraz's DNA on the knife. A medical examination of I.N. identified vaginal injuries consistent with blunt force and semen from her cervix and vagina. *Sarfraz*, 2014 WI 78, ¶¶ 21-22. DNA from the semen recovered from her vagina matched Sarfraz; the semen

recovered from her cervix was not tested for DNA. (ECF No. 14-5 at 53-54.) Police also recovered a pornographic DVD from I.N.'s DVD player. (ECF No. 14-4 at 46-47, 53-54.) I.N. reported that Sarfraz brought the DVD with him and put it on during the assault. (ECF No. 14-3 at 66.) Police never found a mask.

Sarfraz was charged with second degree sexual assault with force or violence by use of a dangerous weapon and the matter proceeded to a jury trial. (ECF No. 10-1 at 2-3.) At trial Sarfraz told a very different version of the events of May 15, 2010, and his relationship with I.N. According to Sarfraz, after I.N. and her father came to live with Sarfraz, his wife, and their three children, he and I.N. developed a good friendship that turned romantic. (ECF No. 14-6 at 103.) Flirtatious teasing became hugging and kissing over about a month. (ECF No. 14-6 at 103-05.) Sarfraz began to discuss marriage with I.N. (ECF No. 14-6 at 106) and I.N. agreed to marry him (ECF No. 14-7 at 3). Sarfraz testified that he did not intend to divorce his wife to be with I.N. because, in his culture, he could have up to four wives. (ECF No. 14-6 at 106) The two also used to watch pornographic movies together. (ECF No. 14-7 at 10-11.)

I.N. and her father moved out of Sarfraz's apartment after Sarfraz's wife saw I.N. and Sarfraz in the bedroom together. (ECF No. 14-6 at 65.) Sarfraz's wife "got really emotional" and "started throwing [I.N.'s] belongings out of [the] apartment." (ECF No. 14-6 at 67.) She demanded that I.N. move out. I.N. and her father did so a few days later. (ECF No. 14-6 at 67-68.)

However, the relationship between Sarfraz and I.N. continued, with Sarfraz regularly going to I.N.'s new apartment. On May 15, 2010, he went over to her apartment, they watched television, and their conversation progressed toward marriage. (ECF No. 14-7 at 20.) I.N. no longer wanted to get married unless Sarfraz left his wife and children instead of having I.N. as a second wife. (ECF No. 14-7 at 20.) Sarfraz refused to leave his family and "after that … things got heated," according to Sarfraz. (ECF No. 14-7 at 21.) I.N. "got furiously mad," grabbed Sarfraz by the collar, and began to hit him with her fist. (ECF No. 14-7 at 22.)

When Sarfraz went to use the bathroom, I.N. came in and cut him on his face with a knife. (ECF No. 14-7 at 23-24.) A struggle ensued during which Sarfraz grabbed I.N. around her neck and was able to get the knife away from I.N. (ECF No. 14-7 at 25-26.) Sarfraz threatened to call the police, warning I.N. that, if he did so, it might complicate her immigration status. (ECF No. 14-7 at 26-27.)

I.N. became remorseful, began to cry, and tried to comfort Sarfraz. She sat atop Sarfraz and started what Sarfraz described as "love talk." (ECF No. 14-7 at 28.) Sarfraz's pants were still down after having been attacked in the bathroom and I.N. took his penis in her hand, told him that she loved him, and that she wanted to have sex with him. (ECF No. 14-7 at 29.) Sarfraz asked I.N. to leave him alone but she persisted, lifting up her shirt. (ECF No. 14-7 at 29.) I.N. continued with the "love talk" and asked Sarfraz to forgive her. (ECF No. 14-7 at 31.) Their intimate contact continued. Sarfraz was

4

uncertain if they actually had intercourse (ECF No. 14-7 at 43) but testified he masturbated himself and ejaculated near her vagina. (ECF No. 14-7 at 32-33).

Sarfraz wanted to tell the jury more but the court barred him from doing so. Relying upon Wisconsin's rape shield statute, the trial court barred Sarfraz from testifying that there were prior instances when the kissing and hugging progressed to Sarfraz touching I.N.'s breasts and I.N. rubbing Sarfraz's penis until he ejaculated. (ECF No. 14-1 at 31.) This relationship continued after I.N. moved with her father to their own apartment. (ECF No. 14-1 at 33-34.) However, Sarfraz denied ever previously having sexual intercourse with I.N. (ECF No. 14-1 at 30-31.) Sarfraz also wanted the jury to hear more from his wife. Absent Wisconsin's rape shield law she would have testified not just that she found Sarfraz and I.N. in the bedroom together but that she found them in bed together, with neither wearing pants. (ECF No. 14-2 at 18-19).)

Although acknowledging that the past sexual contact was relevant evidence, the trial court concluded that Wisconsin's rape shield law barred its admission because the past sexual contact was so different from the violent armed assault and sexual intercourse alleged to have occurred on May 15, 2010. (ECF No. 14-2 at 41-43.) Thus, it barred the admission of evidence regarding any prior sexual contact between Sarfraz and I.N. but permitted evidence of romantic contact such as kissing and hugging. (ECF No. 14-2 at 44.)

The jury found Sarfraz guilty and the court sentenced him to ten years of initial confinement to be followed by five years of extended supervision. (ECF No. 10-1 at 2.) Sarfraz appealed and the Wisconsin Court of Appeals reversed, holding that the trial court erred by excluding the evidence of the past sexual contact between Sarfraz and I.N. *State v. Sarfraz*, 2013 WI App 57, 348 Wis. 2d 57, 832 N.W.2d 346. The Wisconsin Supreme Court reversed the court of appeals and affirmed the conviction. *State v. Sarfraz*, 2014 WI 78, 356 Wis. 2d 460, 851 N.W.2d 235.

Sarfraz then filed the present petition for a writ of habeas corpus in this court. (ECF No. 1.) All parties consented to the full jurisdiction of a magistrate judge (ECF No. 3, 7, 8) and the matter is now ready for resolution.

## II. Standard of Review

A federal court may consider habeas relief for a petitioner in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Following the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court generally may grant habeas relief only if the state court decision was "either (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Miller v. Smith*, 765 F.3d 754, 759-60 (7th Cir. 2014) (quoting 28 U.S.C. § 2254(d)(1), (2)). The

parties here both presume that the AEDPA standard applies. (ECF Nos. 2 at 15-18; 13 at 11-12.) However, this is not as clear as it is in the ordinary habeas case.

Sarfraz argued to the Wisconsin Supreme Court that the trial court's decision to exclude evidence of prior sexual contact was inconsistent with both Wisconsin's rape shield statute and the United States Constitution—specifically, his right to cross-examine adverse witnesses. Thus, Sarfraz fairly presented his constitutional claim to the state court. *See Anderson v. Benik*, 471 F.3d 811, 814-15 (7th Cir. 2006). In its decision, however, the Wisconsin Supreme Court discussed only whether evidence of prior sexual contact between Sarfraz and I.N. was admissible under Wisconsin's rape shield statute. *See Sarfraz*, 2014 WI 78, ¶ 56. Although it briefly noted that a defendant has a constitutional right to present a defense and confront adverse witnesses, *Sarfraz*, 2014 WI 78, ¶ 37, it did not explicitly discuss whether the exclusion of evidence of prior sexual contact was consistent with Sarfraz's constitutional right to cross-examine witnesses. *Compare Sarfraz*, 2014 WI 78, *with State v. DeSantis*, 155 Wis. 2d 774, 793-94, 456 N.W.2d 600 (1990) (discussing related claim of whether evidence properly excluded under Wisconsin's rape shield statute otherwise violated the defendant's constitutional rights).

"When a state court is silent with respect to a habeas corpus petitioner's claim, that claim has not been 'adjudicated on the merits' for purposes of § 2254(d)." *Canaan v. McBride*, 395 F.3d 376, 382 (7th Cir. 2005). Under such circumstances, the court does not

apply the highly deferential standard of review set forth in 28 U.S.C. § 2254(d) but instead relies upon the general standard set forth in 28 U.S.C. § 2243 to "dispose of the matter as law and justice require." *See id.* at 383.

However, Wisconsin's standard for assessing whether evidence is admissible despite Wisconsin's rape shield law appears to involve essentially the same balancing the United States Supreme Court requires when assessing whether an evidentiary rule unconstitutionally interferes with a defendant's right to present a defense. Under federal law, a rule of evidence that limits a defendant's right to confront or cross-examine a witness is constitutional if the state's "legitimate interests in the criminal trial process" are greater than defendant's competing interest in presenting a defense and cross-examining witnesses. *Chambers v. Miss.*, 410 U.S. 284, 295 (1973). This is essentially the standard the Wisconsin Supreme Court articulated when it said that the evidence Sarfraz sought to present was admissible if "the evidence of sexual contact with the complainant is of 'sufficient probative value to outweigh its inflammatory and prejudicial nature.'" *Sarfraz*, 2014 WI 78, ¶ 40 (quoting *State v. Jackson*, 216 Wis. 2d 646, 659, ¶ 20, 575 N.W.2d 475, 481 (1998)); *see also State v. DeSantis*, 155 Wis. 2d 774, 785, 456 N.W.2d 600 (1990).

Although Sarfraz argues that the Wisconsin Supreme Court did not address his constitutional claim (*see* ECF Nos. 2 at 21, 22, 16 at 2, 4-5, 5), he does not contend that that failure means that his claim must be reviewed under 28 U.S.C. § 2243. Instead,


8

Case 2:15-cv-00880-WED   Filed 01/11/17   Page 8 of 16   Document 17

Sarfraz argues that it demonstrates that the court's decision was an unreasonable application of clearly established federal law. But that argument is different from arguing that the pre-AEDPA standard of review should apply to Sarfraz's claim.

In the absence of any argument from Sarfraz that the § 2254(d) standard of review should not apply, the court will presume that the Wisconsin Supreme Court's analysis under the third prong of the *DeSantis* test was co-extensive with the constitutional analysis set forth in, for example, *Chambers v. Mississippi*, 410 U.S. 284 (1973) and *Davis v. Alaska*, 415 U.S. 308 (1973). Therefore, the court will apply the highly deferential post-AEDPA standard of review to Sarfraz's claim.

Under the post-AEDPA standard of review it is not enough for the federal court to conclude that the state court's decision was incorrect. *Carter v. Butts*, 760 F.3d 631, 635 (7th Cir. 2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000); *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002)). Rather, the decision of the state court must have been unreasonable. *Id*. In the context of a decision that is allegedly contrary to clearly established federal law, the petitioner must show that "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). Similarly, a petitioner cannot prevail on a claim of unreasonable determination of the facts just because the reviewing court would have come to a different conclusion. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015). "If '[r]easonable minds reviewing the record might

9
Case 2:15-cv-00880-WED   Filed 01/11/17   Page 9 of 16   Document 17

disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's … determination.'" *Id.* (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

### III. Sarfraz's Claims

Sarfraz argues that his Sixth and Fourteenth Amendment rights to confrontation, effective cross-examination, and to present a defense were violated when the trial court refused to permit him to present evidence of his prior sexual contact with I.N. Sarfraz claims that the Wisconsin Supreme Court unreasonably applied United States Supreme Court precedent when it concluded that the trial court did not abuse its discretion by excluding the evidence. Sarfraz further claims that the decision of the Wisconsin Supreme Court involved an unreasonable determination of the facts in light of all the evidence presented.

Although Sarfraz makes these broad assertions of constitutional error, as the respondent notes (ECF No. 13 at 12-13), he appears to focus on a claim that the Wisconsin Supreme Court misapplied Wisconsin's rape shield law. Sarfraz's substantive argument spans roughly three-and-a-half pages and is devoid of any citation or discussion of relevant United States Supreme Court precedent. (ECF No. 22-25.) Instead, relying on *State v. Pulizzano*, 155 Wis. 2d 633, 456 N.W.2d 325 (1990), Sarfraz argues, "If this Court applied the *Pulizzano* test to this case to balance the defendant's rights to present the proffered evidence against the state's interest in

excluding such evidence, this Court should rule that such evidence should be admitted at trial." (ECF No. 2 at 22.)

However, federal courts cannot decide habeas petitions by applying state court precedents or grant a petition because a state court erred in applying state law. *See Sussman v. Jenkins*, 636 F.3d 329, 352 (7th Cir. 2011). This court's decision must be controlled by the precedents of the United States Supreme Court. That point having been made by the respondent, in reply Sarfraz shifted his argument, addressing his claims vis-à-vis federal precedents.

### A. Application of United States Supreme Court Precedent in *Chambers* and *Davis*.

The Sixth Amendment guarantees defendants the right "to be confronted with the witnesses against him." U.S. Const. Amend. VI. The right to confrontation is secured through the opportunity to cross-examine witnesses. *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974). In *Chambers v. Mississippi,* 410 U.S. 284, 294 (1973), the Supreme Court stated that "the rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." However, the Court also recognized that "the right to confrontation is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests." *Id.* at 295.

Rape shield laws, including Wisconsin's codified at Wis. Stat. § 972.11, were enacted in an attempt to accommodate one of these "other legitimate interests." *See DeSantis*, 155 Wis. 2d at 784–85 ("The rape shield law expresses the legislature's

determination that evidence of a complainant's prior sexual conduct has low probative value and a highly prejudicial effect."); *State v. Herndon*, 145 Wis. 2d 91, 105, 426 N.W.2d 347, 352 (Ct. App. 1988) ("Rape shield laws were implemented to overcome the invidious and outrageous common law evidentiary rule allowing complainants to be asked in depth about their prior sexual experiences for the purpose of humiliation and harassment and to show unchastity."); *see also Michigan v. Lucas*, 500 U.S. 145, 149-50 (1991) ("The Michigan statute represents a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy."). Sarfraz does not dispute that Wisconsin's rape shield statute serves a valid government purpose.

The Court of Appeals for the Seventh Circuit has at least twice considered Wisconsin's rape shield statute in the context of a habeas petition. In *Dunlap v. Hepp*, 436 F.3d 739 (7th Cir. 2006), the defendant sought to question a Child Protective Services investigator about information the investigator received from a witness regarding the six-year-old victim's sexualized behavior. *Id.* at 745. The court concluded that the state court reasonably balanced the relevant factors when excluding this evidence. *Id.* And in *Hammer v. Karlen*, 342 F.3d 807 (7th Cir. 2003), the court concluded that the state courts reasonably barred the defendant from cross-examining minor victims about the fact that they engaged in "sexual horseplay" before the alleged sexual assaults. *Id.* at 809-10. The defendant had sought to introduce the evidence to show either that the victims had a

motive to fabricate the allegations or that one of them might have actually assaulted the other victims. *Id.*

Sarfraz did not seek to introduce evidence of past sexual contact with I.N. to explain objective evidence that tended to indicate that the sexual intercourse was non-consensual. *Cf. State v. Tikkuri*, 2008 WI App 17, ¶ 27, 307 Wis. 2d 444, 745 N.W.2d 88 (unpublished) (permitting evidence of defendant and complainant's history of consensual "rough sex" to rebut inference that complainant's injuries evidenced non-consent). Nor did Sarfraz seek to buttress his allegation that I.N. used sex as a means of reconciliation by showing that it was consistent with her past conduct. *Cf. State v. Montoya*, 2014-NMSC-032, 333 P.3d 935, 944 (permitting evidence of history of "make-up sex" between complainant and defendant as evidence that defendant lacked requisite intent).

Rather, Sarfraz sought to introduce evidence of his prior sexual relationship with I.N. in an attempt impeach her credibility and to make his version of the events more plausible. Sarfraz was asking the jury to believe that I.N. lashed out violently when he refused to give her money or leave his wife and that she used sex as a means of reconciliation. And then she quickly fabricated an elaborate tale of rape, putting a pornographic movie in her DVD player so she could say Sarfraz brought it over and made her watch it, twice scrawling the start of Sarfraz's name in blood, inflicting vaginal injuries upon herself to corroborate her claim that the intercourse was violent

13

and non-consensual, and then going screaming half-naked into her apartment hallway so she could be discovered by a neighbor. According to Sarfraz, his version of the events would have been more believable if the jury had heard evidence that, rather than merely a few hugs and kisses, his prior relationship with I.N. included sexual contact.

The Wisconsin Supreme Court could reasonably conclude that the proffered evidence did not meaningfully render Sarfraz's version of what happened more plausible. Balanced against Sarfraz's interest in presenting this nominally relevant evidence is the state's interest in encouraging victims of sexual assault to report the crime and protecting them from the humiliation that results when a victim's alleged sexual history is presented in open court. *See State v. DeSantis*, 155 Wis. 2d 774, 789, 456 N.W.2d 600, 607 (1990). Balancing these interests a court could reasonably conclude that the scale tipped against Sarfraz and in favor of the state's interests.

Thus, a reasonable jurist could conclude that the exclusion of the evidence did not offend Sarfraz's constitutional rights. Therefore, this court must conclude that the state courts did not unreasonably apply clearly established federal law when they concluded that evidence of Sarfraz and I.N.'s prior sexual relationship was properly excluded at trial.

### B. Unreasonable Determination of the Facts

Sarfraz also asserts, "in light of all of the evidence presented in the subsequent appeals undertaken by Sarfraz, the rulings of the Wisconsin state courts constitute an

unreasonable determination of the facts and application of applicable Supreme Court precedent to them, which also warrant habeas relief." (ECF No. 1, ¶ 11(b); ECF No. 2 at 15, 17-18.) Aside from this bald assertion (ECF No. 1, ¶ 11(b); ECF No. 2 at 15) and recounting the general standard (ECF No. 2 at 17-18), Sarfraz does not develop any argument as to how the state courts' adjudication of his constitutional claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Therefore, the court finds that Sarfraz forfeited any basis for relief pursuant to 28 U.S.C. § 2254(d)(2) by failing to develop his argument. *See Wagner v. Teva Pharms. USA, Inc.*, 840 F.3d 355 (7th Cir. 2016) (citing *Central States, Southeast and Southwest Areas Pension Fund*, 181 F.3d 799, 808 (7th Cir. 1999) (arguments not developed in any meaningful way are waived)); *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014); *Milligan v. Bd. of Trustees of S. Illinois Univ.*, 686 F.3d 378, 386 (7th Cir. 2012).

## IV. Conclusion

Had the court permitted Sarfraz to introduce evidence of his prior sexual relationship with I.N., the evidence might have been humiliating and degrading to I.N. Moreover, the evidence was of a minimal probative value to Sarfraz's defense given the facts and circumstances of this case. Therefore, a reasonable jurist could find that Sarfraz's constitutional rights were not violated by the preclusion of this evidence.

Consequently, the court must deny Sarfraz's petition for habeas corpus relief under 28 U.S.C. § 2254.

However, the court finds that Sarfraz has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *see also* Rule 11 of the Rules Governing Section 2254 Cases. Therefore, should Sarfraz wish to appeal, the court hereby grants him a certificate of appealability as to the question of whether the Wisconsin Supreme Court's decision was inconsistent with the United States Constitution such that Sarfraz is entitled to federal habeas corpus relief.

**IT IS THEREFORE ORDERED** that Sarfraz's petition for a writ of habeas corpus is denied. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 11th day of January, 2017.

WILLIAM E. DUFFIN
U.S. Magistrate Judge